**DEREK SMITH LAW GROUP PLLC**          *Counsel for Plaintiff*

By: <u>CHARLES M. SCOTT, ESQ.</u>

Attorney ID No.: 326926

1835 Market St., Suite 2950

Philadelphia, Pennsylvania 19103

(215) 391-4790

charles@dereksmithlaw.com

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENJAMIN VAYNSHELBOYM**, | : | **COMPLAINT** |
| 10790 Heather Street, Apt. A | : | |
| Philadelphia, PA 19116 | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | No. 2:21-cv-1303 |
| | : | |
| **COMHAR, INC.**, | : | |
| 100 W. Lehigh Avenue | : | |
| Philadelphia, PA 19133 | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant | : | |

Plaintiff, Benjamin Vaynshelboym, by and through his counsel, The Derek Smith Law Group, PLLC, brings this civil action against Defendant COMHAR, Inc. (hereafter "Defendant" or "COMHAR"). Upon information and belief and in support thereof, Plaintiff alleges as follows:

## I.  NATURE OF THE COMPLAINT

1.     This is an action seeking damages to redress the injuries Plaintiff has suffered, and continues to suffer, as a result of unlawful retaliation by Defendant against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

## II. **PARTIES**

2.      Plaintiff **BENJAMIN VAYNSHELBOYM**, is an adult male individual and resident of the Commonwealth of Pennsylvania, residing at 10790 Heather Street, Apt. A, Philadelphia, PA 19116.

3.      Defendant **COMHAR, INC.** (hereafter "Defendant" or "COMHAR") is a business entity duly organized and existing under the laws of the Commonwealth of Pennsylvania.

4.      Defendant's headquarters and address for purposes of service is located at 100 W. Lehigh Avenue, Philadelphia, Pennsylvania 19133.

5.      At all times material, Defendant employed more than 500 people.

6.      At all times material, Plaintiff was an "employee" and Defendant COMHAR was an "employer" within the meaning of all applicable law.

7.      The unlawful acts alleged in this Complaint were committed by Defendant COMHAR and/or Defendant COMHAR's officers, agents, employees, or representatives, while actively engaged in the management of Defendant COMHAR's businesses or affairs and with the authorization of Defendant COMHAR.

## III. **JURISDICTION & VENUE**

8.      This Court has subject matter jurisdiction over Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), pursuant to 28 U.S.C. §1331, and 29 U.S.C. § 216(b).

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district.

## IV. ADMINISTRATIVE PROCEEDINGS & EXHAUSTION OF REMEDIES

10.     On December 14, 2020, Plaintiff dual-filed with the EEOC and PHRC a fourth Charge of Discrimination (Charge No. 530-2021-01089) ("December 2020 Charge") against Defendant.

11.     On December 18, 2020, the EEOC issued a Notice of Right to Sue on Plaintiff's December 2020 Charge.

12.     Plaintiff's claims under the Pennsylvania Human Relations Act ("PHRA") are still pending before Pennsylvania Human Relations Commission ("PHRC") because less than one year has elapsed since PHRC assumed jurisdiction over his charges. After one year, Plaintiff will seek leave to amend this complaint to assert his PHRA claims.

## V. FACTUAL ALLEGATIONS

13.     Around January 2014, Defendant COMHAR hired Plaintiff to work as a Licensed Practical Nurse ("LPN") at Defendant COMHAR's York Street Facility located 2201 East York Street, Philadelphia, Pennsylvania 19125.

14.     Defendant's York Street Facility is a licensed Long-Term Structured Residence that provides psychiatric and behavioral health services for eight (8) adults with severe mental illness and cognitive disabilities in a group home setting.

15.     Defendant COMHAR terminated Plaintiff's employment around April 2019.

16.     On June 8, 2020, Plaintiff filed suit in the Eastern District of Pennsylvania (Civil Action No. 20-cv-02690-ER) alleging employment discrimination and retaliation arising out of COMHAR's actions during Plaintiff's employment and actions in terminating Plaintiff's employment in April 2019.

17.     Plaintiff's Complaint against COMHAR in the underlying Title VII employment discrimination action is attached hereto as Exhibit A and incorporated herein by reference.

18.     On October 19, 2020, Counsel for Defendant COMHAR sent a letter to Counsel for Plaintiff accusing Plaintiff of "theft of confidential business and proprietary information" and threatening that Plaintiff's "conduct in stealing these records and disclosing them is of such a serious nature that he could be subject to criminal and civil sanctions for this conduct as well."

19.     Defendant COMHAR's letter demanded that Plaintiff turn over "all COMHAR documents… in his custody and control" within 10 days or Defendant COMHAR "will initiate an action against [Plaintiff] to compel the return of COMHAR property and seek all other available legal remedies against him."

20.     COMHAR's threat letter demanded return of all "COMHAR records" which, in effect, demanded the return of all evidence in Plaintiff's possession that had been identified in discovery and was being used as evidence supporting Plaintiff's Title VII employment discrimination claims against COMHAR in federal court.

21.     Importantly, COMHAR sent this threat letter to Plaintiff the same day that the parties' memoranda were due to the Federal Magistrate Judge in advance of a Settlement Conference scheduled for the following week on October 26, 2020 in the federal action.

22.     That Settlement Conference was not successful, and on November 13, 2020, Defendant COMHAR made good on its threat by filing a civil lawsuit against Plaintiff in the Philadelphia Court of Common Pleas (Civil Action No. 201101299).

23.     Plaintiff was served with process on November 25, 2020.

24. Initially, Plaintiff defended the state court lawsuit by filing Preliminary Objections to COMHAR's Complaint seeking to dismiss all count for failure to state a claim, strike the Complaint for insufficient specificity, and to strike scandalous and impertinent allegations.

25. During the pendency of motion practice on the pleadings in the state court action, on December 14, 2020, Plaintiff filed a fourth Charge of Discrimination with the EEOC against COMHAR alleging actionable retaliation arising out of Defendant COMHAR's actions to file a lawsuit against Plaintiff in state court.

26. Concurrent with filing a new Charge of Discrimination, on December 17, 2020, Plaintiff moved to amend and supplement his Complaint in federal court to add a new count of retaliation under Title VII against COMHAR.

27. On January 5, 2021, COMHAR filed a near-identical Amended Complaint in the state court action, thereby mooting Plaintiff's Preliminary Objections.

28. On January 25, 2021, Plaintiff filed Preliminary Objections to COMHAR's Amended Complaint once again seeking to dismiss all counts for failure to state a claim, to strike the Complaint for insufficient specificity, and to strike scandalous and impertinent allegations.

29. The Amended Complaint filed against Plaintiff by Defendant COMHAR in the Philadelphia Court of Common Pleas is attached hereto as Exhibit B and incorporated herein by reference.

30. Defendant COMHAR's Amended Complaint, like its predecessor, brought three common-law causes of action against Plaintiff specifically arising out of Plaintiff's protected activities in filing and pursuing multiple Charges of Discrimination and an employment discrimination lawsuit against COMHAR: (1) Conversion, (2) Breach of Duty of Loyalty, and (3) Misappropriation of Confidential Information. (Exhibit B).

31.     Indeed, Defendant COMHAR's lawsuit against Plaintiff specifically alleges that all of the facts giving rise to the Complaint arise out of Plaintiff's protected activities in pursuing Charges of Discrimination and a Title VII employment discrimination lawsuit against Defendant COMHAR. (See Exhibit B).

32.     Importantly, Defendant COMHAR's Amended Complaint alleges that it only learned that Plaintiff had obtained documents during his employment because COMHAR's counsel submitted a Freedom of Information Act ("FOIA") request to the EEOC as a direct response to Plaintiff filing an employment discrimination lawsuit against COMHAR. (See Exhibit B at ¶¶ 25-27).

33.     Defendant COMHAR's Amended Complaint against Plaintiff goes so far as to accuse Plaintiff of "taking confidential and proprietary information from COMHAR without its consent or knowledge in an effort to construct an employment discrimination claim against COMHAR in May 2016 which did not otherwise exist." (Exhibit B at ¶ 22).

34.     Without alleging any facts in support, COMHAR goes one step further to allege that "COMHAR believes and therefore avers that [Plaintiff] engaged in the same kind of conduct with one of his prior employers." (Exhibit B at ¶ 22).

35.     Defendant COMHAR's lawsuit does not allege that any of the documents Plaintiff obtained were used for any purpose other than as evidence in support of Plaintiff's Title VII employment discrimination claims against COMHAR.

36.     Moreover, COMHAR's lawsuit does not allege that any of the documents were trade secrets, or that they were procured in breach of any confidentiality or non-disclosure agreement between Plaintiff and COMHAR.

37.     Consequently, the only conceivable "injury in fact" to COMHAR would be its potential exposure to liability in Plaintiff's Title VII employment discrimination claims against it. Indeed, COMHAR's standing to sue depended entirely on whether Plaintiff's employment discrimination claims against COMHAR were successful and resulted in a money judgement against COMHAR because, under any other circumstance, COMHAR would not be able to articulate an injury in fact necessary to establish standing to sue.

38.     As a result, Defendant COMHAR's lawsuit had the effect of dissuading Plaintiff from pursuing his Title VII employment discrimination claims against COMHAR because Plaintiff's success on those claims would give COMHAR standing to sue Plaintiff on the claims it brought against him in state court.

39.     Around January 25, 2021, through counsel, Plaintiff unilaterally and voluntarily returned to COMHAR 31 pages of selected records that Plaintiff submitted confidentially to the EEOC in 2016 in support of his first Charge of Discrimination against COMHAR.

40.     Plaintiff returned these 31 pages of records to COMHAR because they were not material evidence in his employment discrimination lawsuit against COMHAR, and they represented a tiny fraction of the hundreds of pages of documents that Plaintiff obtained in the course of his employment with COMHAR, Inc. and were at issue in COMHAR's state court lawsuit against Plaintiff.

41.     At no time were Plaintiff's actions to return these documents part of a negotiated resolution of COMHAR's lawsuit against him.

42.     On February 5, 2021, just days before Defendant COMHAR's response to Plaintiff's Preliminary Objections to its Amended Complaint in the state court action was due,

Defendant COMHAR unilaterally and voluntarily filed a Praecipe to Discontinue its lawsuit against Plaintiff.

43.     On March 10, 2021, Plaintiff's December 17, 2020 motion to amend and supplement his Complaint in federal court was denied because the predicate facts of the newly accrued retaliation claim were sufficiently distinct to warrant bringing the claim as a separate lawsuit.

44.     Defendant COMHAR's actions sue Plaintiff and then withdraw the lawsuit at the pleading stage without litigating the merits of the action has the irreversible effect of damaging Plaintiff's employment prospects because any future prospective employer would likely forego hiring Plaintiff if they were to learn that Plaintiff was sued by his former employer and accused of "taking confidential and proprietary information from COMHAR without its consent or knowledge in an effort to construct an employment discrimination claim against COMHAR in May 2016 which did not otherwise exist." (Exhibit B at ¶ 22).

45.     At all times material since his unlawful termination from COMHAR in April 2019, and continuing presently, Plaintiff has been diligently applying to job openings for Licensed Practical Nurse positions.

46.     Most if not all job applications for LPN positions include some inquiry into whether the applicant has ever been terminated from previous employers. Moreover, even a superficial background investigation would reveal that Plaintiff was named as a defendant in a lawsuit by his former employer.

47.     Despite more than 7 years of nursing experience, and hundreds of applications, Plaintiff has only been interviewed a handful of times and has not been offered a single position as a Licensed Practical Nurse.

48. As a direct and proximate result of Defendant COMHAR's actions to file a lawsuit against Plaintiff, Plaintiff's future employment prospects as a Licensed Practical Nurse have been irreparably damaged.

49. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition as a direct result of the unlawful employment practices of Defendant COMHAR alleged herein.

<u>**COUNT I**</u>

**Unlawful Retaliation in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.***
***Plaintiff v. Defendant COMHAR, Inc.***

50. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

51. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

52. The Supreme Court of the United States has expressly held that Title VII protects former employees from retaliation by their former employers. *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346 (1997) ("It being more consistent with the broader context of Title VII and the primary purpose of § 704(a), we hold that former employees are included within § 704(a)'s coverage."); *see also Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 157 (3d Cir. 1999) ("Post-employment actions by an employer can constitute discrimination under Title VII if they hurt a plaintiff's employment prospects.").

53.     To sustain a claim of retaliation under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67–68 (2006) (citations omitted).

54.     Plaintiff engaged in protected activity under Title VII including, but not limited to, the following:

>   a.  Requesting a religious accommodation from Defendant COMHAR;
>   b.  Challenging and opposing Defendant COMHAR's unlawful employment practices;
>   c.  Filing charges of discrimination with the EEOC and PHRC.
>   d.  Filing a lawsuit against Defendant COMHAR on June 8, 2020 alleging discrimination and retaliation during Plaintiff's employment with COMHAR. (Exhibit A).

55.     Defendant COMHAR's retaliatory lawsuit against Plaintiff is based solely on Plaintiff's protected activites in making and supporting employment discrimination claims under Title VII against COMHAR. (Exhibit B).

56.     Defendant's COMHAR's actions to file a lawsuit against Plaintiff are materially adverse because it would dissuade a reasonable current or former employee in Plaintiff's position from making or supporting a Charge of Discrimination against COMHAR, Inc.

57.     Indeed, it is not hard to imagine that a reasonable employee considering making or supporting a Charge of Discrimination with the EEOC against COMHAR would be dissuaded from doing so out of fear that Defendant COMHAR would file a retaliatory lawsuit against them, just as they have done to Plaintiff here.

58.     Moreover, Defendant COMHAR's lawsuit against Plaintiff – regardless of its merits – has the effect of damaging Plaintiff's employment prospects because any future prospective employer would likely forego hiring Plaintiff if they were to learn that he was sued by his former employer and accused of "taking confidential and proprietary information from COMHAR without its consent or knowledge in an effort to construct an employment discrimination claim against COMHAR in May 2016 which did not otherwise exist." (Exhibit B at ¶ 22).

59.     Plaintiff's participation in proceedings under Title VII and/or opposition to Defendant COMHAR's unlawful employment practices was the motivating and/or determinative factor in COMHAR's actions to file a lawsuit against Plaintiff. (Exhibit B).

60.     Defendant COMHAR's actions to file a lawsuit against Plaintiff in retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964.

61.     As a result of Defendant COMHAR's retaliatory actions against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, Plaintiff has suffered and continues to suffer emotional and financial harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant COMHAR, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Dated: <u>March 17, 2021</u>            **DEREK SMITH LAW GROUP, PLLC**



CHARLES M. SCOTT, ESQUIRE
Attorney ID No.: 326926
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
charles@dereksmithlaw.com
*Attorney for Plaintiff*



**EXHIBIT A**

**DEREK SMITH LAW GROUP PLLC**          *Counsel for Plaintiff*

By: CHARLES M. SCOTT, ESQ.

Attorney ID No.: 326926

1835 Market St., Suite 2950

Philadelphia, Pennsylvania 19103

(215) 391-4790

charles@dereksmithlaw.com

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENJAMIN VAYNSHELBOYM,** | : | **COMPLAINT** |
| 10790 Heather Street, Apt. A | : | |
| Philadelphia, PA 19116 | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | No. 2:20-cv-02690 |
| | : | |
| **COMHAR, INC.,** | : | |
| 100 W. Lehigh Avenue | : | |
| Philadelphia, PA 19133 | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant | : | |

Plaintiff, Benjamin Vaynshelboym, by and through his counsel, The Derek Smith Law Group, PLLC, brings this civil action against Defendant COMHAR, Inc. (hereafter "Defendant" or "COMHAR"). Upon information and belief and in support thereof, Plaintiff alleges as follows:

### I.  NATURE OF THE COMPLAINT

1.      This is an action seeking damages to redress the injuries Plaintiff has suffered, and continues to suffer, as a result of unlawful employment discrimination and retaliation by Defendant against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

2.      This action also seeks damages for Defendant's willful failure to pay overtime wages to Plaintiff in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"),

Pennsylvania Minimum Wage Act ,42 P.S. § 333.101, *et seq.* ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.* ("WPCL").

## II. PARTIES

3.     Plaintiff **BENJAMIN VAYNSHELBOYM**, is an adult male individual and resident of the Commonwealth of Pennsylvania, residing at 10790 Heather Street, Apt. A, Philadelphia, PA 19116.

4.     Defendant **COMHAR, INC.** (hereafter "Defendant" or "COMHAR") is a business entity duly organized and existing under the laws of the Commonwealth of Pennsylvania.

5.     Defendant's headquarters and address for purposes of service is located at 100 W. Lehigh Avenue, Philadelphia, Pennsylvania 19133.

6.     At all times material, Defendant employed more than 500 people.

7.     At all times material, Plaintiff was an "employee" and Defendant COMHAR was an "employer" within the meaning of all applicable law.

8.     The unlawful acts alleged in this Complaint were committed by Defendant COMHAR and/or Defendant COMHAR's officers, agents, employees, or representatives, while actively engaged in the management of Defendant COMHAR's businesses or affairs and with the authorization of Defendant COMHAR.

## III. JURISDICTION & VENUE

9.     This Court has subject matter jurisdiction over Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), pursuant to 28 U.S.C. §1331, and 29 U.S.C. § 216(b).

10.     This Court has supplemental jurisdiction over Plaintiff's attendant state law claims pursuant to 28 U.S.C. § 1367 because the claims arising under state law are so related to the claims arising under federal law as to form the same case or controversy.

11.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district.

## IV.  ADMINISTRATIVE PROCEEDINGS & EXHAUSTION OF REMEDIES

12.     On May 6, 2016, Plaintiff dual-filed with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") his first Charge of Discrimination (Charge No. 530-2016-02212) ("May 2016 Charge") against Defendant COMHAR.

13.     The May 2016 Charge alleged a continuing act of discrimination and retaliation on the basis of Plaintiff's religion and national origin.

14.     Importantly, the May 2016 Charge alleged religious discrimination on the grounds that "[Defendant] has not allowed me to change my work schedule to accommodate my religious beliefs."

15.     After Plaintiff filed the May 2016 Charge, Defendant allowed Plaintiff flexibility in scheduling to accommodate Plaintiff's observance of Shabbat.

16.     On November 22, 2016, the EEOC issued a right to sue letter on Plaintiff's May 2016 Charge, but Plaintiff did not pursue a lawsuit because Defendant COMHAR had granted Plaintiff the requested religious accommodation.

17.     From June 2016 through September 2018, Defendant COMHAR provided Plaintiff with religious accommodations.

18.     Around September 2018, Defendant COMHAR rescinded the religious accommodation afforded to Plaintiff for two years.

19.     On March 14, 2019, Plaintiff dual-filed with the EEOC and PHRC a second Charge of Discrimination (Charge No. 530-2019-02413) ("March 2019 Charge") against Defendant as a result of Defendant's revocation of the religious accommodation previously afforded to Plaintiff for two years.

20.     The March 2019 Charge alleged, *inter alia*, that Defendant's September 2018 revocation of the religious accommodation previously afforded to Plaintiff was a continuing act of religious discrimination and a new act of retaliation for Plaintiff's requests for religious accommodation and prior EEOC activity on that exact issue.

21.     On March 29, 2019, Defendant placed Plaintiff under internal investigation and suspended him without pay pending the outcome of Defendant's internal investigation.

22.     On April 25, 2019, Defendant formally terminated Plaintiff's employment based on Defendant's conclusions from the investigation.

23.     On August 6, 2019, Plaintiff dual-filed with the EEOC and PHRC a third Charge of Discrimination (Charge No. 530-2019-05652) ("August 2019 Charge") against Defendant COMHAR based on Defendant's termination of Plaintiff's employment on April 25, 2019.

24.     Plaintiff's August 2019 Charge alleged, *inter alia*, that Defendant's decision to terminate Plaintiff was unlawful discrimination based on Plaintiff's religion, and Defendant terminated Plaintiff in retaliation for Plaintiff's prior protected activity and opposition to Defendant's unlawful employment practices.

25.     On September 16, 2019, the EEOC issued a Notice of Right to Sue on Plaintiff's March 2019 Charge.

26.     Plaintiff did not pursue a lawsuit on the March 2019 Charge because he had filed the August 2019 Charge arising from Defendant's termination of Plaintiff's employment in April 2019.

27.     On March 16, 2020 the EEOC issued a Notice of Right to Sue on Plaintiff's August 2019 Charge.

28.     Plaintiff's claims under the Pennsylvania Human Relations Act ("PHRA") are still pending before Pennsylvania Human Relations Commission ("PHRC") because less than one year has elapsed since PHRC assumed jurisdiction over his charges. After one year, Plaintiff will seek leave to amend this complaint to assert his PHRA claims.

## V.  FACTUAL ALLEGATIONS

### A.  DISCRIMINATION & RETALIATION ALLEGATIONS

#### (i)  Plaintiff's Religion and Religious Practices

29.     At all times material, Plaintiff was a practicing member of the Jewish religion.

30.     An ancient and universal practice in Plaintiff's religion is the observance of Shabbat, which is Judaism's weekly day of rest lasting from sundown on Friday through appearance of three stars in the sky on Saturday night.

31.     Shabbat is a widely noted hallmark of the Jewish religion and observance entails actively refraining from work activities and actively focusing that time and energy on prayer and engaging with family.

32.     Coinciding with the weekly schedule of Shabbat, the most important weekly worship services for practicing Jews occur on Saturday mornings.

**(ii)  Plaintiff's Employment with Defendant**

33.     Around January 2014, Defendant hired Plaintiff to work as a Licensed Practical Nurse ("LPN") at Defendant COMHAR's York Street Facility located 2201 East York Street, Philadelphia, Pennsylvania 19125.

34.     Defendant's York Street Facility is a licensed Long-Term Structured Residence that provides psychiatric and behavioral health services for eight (8) adults with severe mental illness and cognitive disabilities in a group home setting.

35.     During January and February of 2014, Plaintiff worked as an LPN on a *per diem* basis which entailed working without a set schedule on an as-needed basis.

36.     During the initial two months of employment, Plaintiff's work schedule as a *per diem* LPN never conflicted with his ability to observe and practice Shabbat.

37.     Around February 2014, Defendant offered Plaintiff a full-time position as a LPN at Defendant's York Street Facility in Philadelphia.

38.     At the time Plaintiff was offered a full-time LPN position, it was represented to Plaintiff that he would be replacing a nurse who had recently left Defendant's employment and who had been working the night shift Sunday-Thursday shift.

39.     Plaintiff asked his then-supervisor and Director of the York Street Facility, Bernadette Gaumer ("Director Gaumer") if he would be able to work the same Sunday-Thursday schedule as the nurse he was replacing. Director Gaumer told Plaintiff that he would be able to work that schedule.

40.     Around March 2014, Director Gaumer told Plaintiff that his schedule would be from Monday to Friday but did not specify the hours.

41.     When Director Gaumer gave Plaintiff his schedule on his first day as a full-time nurse, he noticed that the "Friday" shift Defendant required him to work was actually from 12:00 a.m. to 8 a.m. on Saturday, thereby conflicting with Plaintiff's religious observance of Shabbat.

**(iii)    Plaintiff Requests a Religious Accommodation**

42.     Around March 2014, Plaintiff informed Director Gaumer that the Monday-Friday work schedule conflicted directly with his religion and observance of Shabbat.

43.     Plaintiff requested an accommodation to his work schedule that another nurse work that shift, or that his schedule be modified so that he was not scheduled to work any Saturday shifts.

44.     Supervisor Gaumer denied Plaintiff's request for religious accommodation, stating that his shift could not be modified at that time. However, she told him that after six (6) months of full-time employment he could request a schedule modification.

45.     Around August 2014, after six (6) months as a full-time LPN, Plaintiff began verbally requesting schedule changes to accommodate his religion. Defendant denied every request he made.

46.     From around May 2014 until March 2016, Plaintiff worked the Saturday morning shifts as scheduled, despite the conflict with his religious beliefs.

47.     Throughout this time, Plaintiff continued to request accommodations to his work schedule to allow him to observe Shabbat.

48.     Plaintiff submitted accommodation requests to Director Gaumer until Defendant COMHAR hired Shaniya Selden-Graham ("Supervisor Selden-Graham") who became Plaintiff's intermediate supervisor. Thereafter, Plaintiff redirected his accommodation requests to his schedule to Supervisor Selden-Graham.

49. In a performance review of Plaintiff prepared and signed by Supervisor Selden-Graham around June 24, 2015 expressly documents that Plaintiff requested to change his schedule from Monday-Friday to Sunday-Thursday, and that Supervisor Selden-Graham would move Plaintiff's request through the appropriate channels in management and human resources.

50. Plaintiff's request for a schedule change documented in Supervisor Selden-Graham's June 2015 performance review was never granted.

51. For the first two years of Plaintiff's employment, Defendant COMHAR systematically denied Plaintiff's requests for scheduling changes to accommodate his religion, while at the same time regularly granting other employees' requested schedule changes that were requested for non-religious reasons.

52. For example, around March 28, 2016, a LPN named Sandra Gant ("Nurse Gant") employed by Defendant at the York Street Facility made a request to Supervisor Selden-Graham to change her work schedule.

53. Supervisor Selden-Graham promptly took action on Nurse Gant's requested work schedule change and was approved by Defendant COMHAR on the same day.

54. Where Plaintiff's requests to change his schedule to accommodate his religion went unheard for two years; Defendant approved Nurse Gant's schedule change request the same day it was made.

**(iv)   May 2016 – EEOC Charge I**

55. Frustrated by Defendant's disparate treatment and steadfast refusal to provide any type of accommodation for his religious beliefs, Plaintiff dual-filed a Charge of Discrimination with the EEOC and PHRC on May 18, 2016 ("May 2016 Charge").

56.     In the May 2016 Charge, Plaintiff alleged a continuing act of discrimination on the basis of Plaintiff's religion and national origin.

57.     Specifically, Plaintiff alleged religious discrimination on the grounds that "[Defendant] has not allowed me to change my work schedule to accommodate my religious beliefs."

**(v)     June 2016 – Defendant Provides Religious Accommodation**

58.     Around June 2016, after Defendant received notice of Plaintiff's May 2016 Charge, Supervisor Selden-Graham contacted Plaintiff to discuss options to accommodate his religious beliefs.

59.     Around June 2016, Defendant COMHAR agreed that Plaintiff would be permitted to use accrued personal, sick, holiday, and vacation time to take off on Saturdays to accommodate Plaintiff's religious practices. If Plaintiff used up all paid time off, Plaintiff would be permitted to take off Saturdays without pay.

60.     Around November 22, 2016, Plaintiff received a Right to Sue from the EEOC related to his May 2016 Charge of Discrimination. Plaintiff did not pursue a lawsuit at that time because Plaintiff had reached an agreement with Defendant regarding his requested religious accommodation and the basis of the charge was effectively moot.

**(vi)    September 2018 – Defendant Revokes Religious Accommodation**

61.     Around Fall of 2018, Defendant COMHAR hired Colleen Thomas-Philip ("Director Thomas-Philip") to replace Aiesha Ahmed as Program Director of Defendant's York Street Facility.

62.     At all times material, Director Thomas-Philip had supervisory authority over Plaintiff with respect to his employment with Defendant COMHAR.

63.     Around September 2018, shortly after her hire, Director Thomas-Philip rescinded the religious accommodation afforded to Plaintiff for two years under the previous Program Directors of Defendant COMHAR's York Street Facility.

64.     Plaintiff spoke to Director Thomas-Philip in person, explaining her that these requests were the means by which Defendant COMHAR was accommodating Plaintiff's religion.

65.     In response, Director Thomas-Philip told Plaintiff that Defendant COMHAR would no longer permit his religious accommodation.

66.     Around January 11, 2019, Director Thomas-Philip presented Plaintiff with a formal disciplinary warning effectively stating that Plaintiff was being disciplined for violations of Defendant COMHAR's attendance policy based on Plaintiff's requesting days off to observe his religion.

67.     Around January 12, 2019, Plaintiff immediately sent an email disputing the basis for the disciplinary warning from Director Gaumer in detail to Defendant COMHAR's management employees, Elaine Babcock, Jaqueline Polanco, Trapeta Mayson, and LaMar Brooks

68.     Plaintiff then escalated his requests for religious accommodation to Defendant COMHAR's management employees, Human Resources Director Jim Geier ("HR Director Geier") and Chief Program Officer Trapeta Mayson ("CPO Mayson").

69.     However, HR Director Geier and CPO Mayson took no action to reinstate the religious accommodation previously afforded to Plaintiff for two years without incident.

70.     Around February 5, 2019, Defendant COMHAR's Benefits Coordinator, Denise Thompson, sent Plaintiff a letter notifying him that based on Plaintiff's use of sick leave over the past 6 months, Defendant COMHAR had determined that Plaintiff "may have a medical condition that qualifies for FMLA leave."

71.     Plaintiff did not inquire about the need for FMLA leave at any time and did not have a medical condition that qualified for FMLA leave.

72.     At all times material, it was known to Defendant COMHAR that Plaintiff frequently used his sick leave to take days off for purposes of observing his religious practices.

73.     Defendant COMHAR sent that letter to Plaintiff to limit Defendant COMHAR's legal liability in anticipation of terminating Plaintiff's employment.

**(vii)   March 14, 2019 – EEOC Charge II**

74.     On March 14, 2019, Plaintiff dual-filed another charge of religious discrimination with the EEOC and PHRC ("March 2019 Charge").

75.     On March 15, 2019 and March 22, 2019, Plaintiff met again with HR Director Geier and CPO Mayson about his need for religious accommodation.

76.     During these meetings, HR Director Geier stated that he received a copy of the March 2019 EEOC charge filed by Plaintiff and further stated that he wished to work out a resolution of the matter.

77.     In response, CPO Mayson informed Plaintiff that Defendant COMHAR was not willing to honor the religious accommodation agreement it had previously reached.

78.     Plaintiff reiterated that Defendant COMHAR previously agreed to honor his religious accommodation for two years and reminded HR Director Geier and CPO Mayson of the May 2016 Charge due to Defendant's prior refusal to accommodate his religious beliefs.

79.     On March 22, 2019, CPO Mayson sent Plaintiff an email memorializing the meeting to discuss Plaintiff's requested religious accommodations.

80.     In her email, CPO Mayson acknowledged Defendant COMHAR had specific knowledge of Plaintiff's previous EEOC charges and requests for religious accommodation.

81. Nevertheless, CPO Mayson refused to grant Plaintiff's religious accommodation, stating: "[Defendant COMHAR] cannot and will not approve consecutive Fridays off or approve leave time that hasn't been earned."

82. CPO Mayson suggested that Plaintiff "also request other days off" besides Saturdays, ignorant of the fact that Saturday specifically held religious importance to Plaintiff.

83. CPO Mayson concluded her March 22, 2019 email by stating to Plaintiff: "it is your choice to decide if the Monday-Friday schedule still works for you since it won't be changing anytime in the near future."

84. Defendant's decision in September, 2018, to revoke the religious accommodation afforded Plaintiff for two-years, followed by Defendant's steadfast refusal to make any further accommodation of Plaintiff's religion even after Plaintiff filed a second Charge of Discrimination in March 2019, evidences that Defendant's decisions were made with full knowledge that Plaintiff's federal and state civil rights were at issue and may be violated as a result.

**(viii)** **Missing Pill Incident**

85. On March 26, 2019, just days after Defendant's management became aware of Plaintiff's March 14, 2019 EEOC Charge and denied Plaintiff any religious accommodation, Nurse Jessmay Reyes ("Nurse Reyes") reported a single tablet of Lorazepam was missing from its blister pack at the start of her shift.

86. Plaintiff had worked the immediately preceding shift and was still on-premises when Nurse Reyes reported the missing tablet.

87. Plaintiff immediately began searching for the missing tablet Plaintiff but was quickly ordered by Director Thomas-Philip to stop searching because his shift was over and Defendant would not pay Plaintiff for working more than eight (8) hours.

88.     Before leaving the premises on March 26, 2019, at the direction of Director Thomas-Philip and in her presence, Plaintiff completed an incident report documenting the circumstances of the missing tablet of Lorazepam. The existence of Plaintiff's March 26, 2019 Incident Report is documented in Defendant's Compliance Investigation Report.

89.     On March 27, 2019, Plaintiff reported early for his shift at 12:00am and promptly began searching for the tablet of Lorazepam that remained missing from the previous shift.

90.     Plaintiff found the missing tablet in a bucket near the medication closet shortly after he began searching.

91.     Plaintiff immediately reported finding the medication to Nurse Tiffany Ellerbe ("Nurse Ellerbe") who was the other nursing staff working at the time.

92.     Plaintiff also showed Nurse Reyes that he found the tablet and Nurse Reyes said she would follow up with Director Thomas-Philip.

93.     After finding the tablet, Plaintiff returned the physical tablet to the blister pack, marked it with a clear indication so it would not be used, and secured it in the locked medication closet.

94.     Thereafter, in the presence of Nurses Reyes and Ellerbe, Plaintiff drew a single line through the "2" written by Nurse Reyes on the Narcotics Count Sheet for 3/26/19 and wrote a "3" next to it to reflect the previously missing Lorazepam tablet that had been recovered.

95.     The purpose of making the correction was to ensure the pills counts for 3/26/19 and 3/27/19 were balanced and had accounted for the missing tablet.

96.     At all times material, Nurse Reyes had knowledge that Plaintiff corrected her entry on the Narcotic Count Sheet, and Nurse Reyes did not object.

97.     On March 27, 2019 at 12:24am, within minutes of finding the missing tablet, Plaintiff sent an email to Director Thomas-Philip and Nurse Reyes explaining:

> Good morning,
>
> I'm happy to notify that missing Lorazepam tablet for GB was found, we counted all narcs with [Nurse Ellerbe] afterwards and count is balanced now. You can follow up with Tiffany and let me know if it still an issue.
>
> Thank You,
> Ben Vanyshelboym LPN

98.     After finding the missing tablet, securing it in the medication closet, correcting the Narcotics Count Sheet documentation, notifying Director Thomas-Philip and Nurse Reyes by email, Plaintiff had no reason to believe he had done anything wrong or acted improperly in any way. Indeed, Plaintiff had never been accused of misconduct in the five years he had worked for Defendant COMHAR.

99.     Around March 29, 2019, Plaintiff received a letter from Defendant informing him that Director Thomas-Philip was conducting a formal investigation regarding the missing Lorazepam and suspending Plaintiff without pay during the pendency of that investigation.

100.    Around April 4, 2019, Defendant's Compliance Director, LaMar Brooks, interviewed Plaintiff in connection with the investigation, and Plaintiff signed a written statement.

101.    Compliance Director Brooks did not interview Nurse Reyes or Director Thomas-Philip directly, but instead permitted them to submit written statements about the incident on April 5 and April 9, respectively.

102.    Around April 22, 2019, Compliance Director Brooks completed his investigation of the missing Lorazepam tablet on March 26, 2019 and his report concluded:

> After reviewing the evidence, it appears that Ben Vaynshelboym tampered with the medication log. Mr. Vaynshelboym incorrectly

documented the medication count by not accounting for the missing medication on 3/26/19 which took place on his shift and he subsequently completed an incident report for the missing Lorazepam tablet. Mr. Vaynshelboym was also fraudulent in his actions to alter Jessmay Reyes medication count entry on 3/26/19 at 8am. By altering Ms. Reyes entry Mr. Vaynshelboym falsified an entry. Falsification of documentation can be grounds for immediate dismissal.

**(ix) April 2019 - Defendant COMHAR Terminates Plaintiff's Employment**

103.    By letter dated April 25, 2019 – authored and signed by HR Director Geier in his capacity as "Interim Director" of Human Resources for Defendant COMHAR – Plaintiff's employment was terminated for the following reason:

> As a follow up to my letter of March 29, 2019, this letter is to inform you that Comhar has completed the formal investigation regarding the missing Lorazepam tablet at the York Street LTSR.
>
> The results of this investigation has found, that you falsified documentation by incorrectly documenting the medication count by not accounting for the missing Lorazepam tablet on 3/26/19. Therefore, in accordance with Comhar policy, the falsification of documentation is grounds for immediate termination of your employment.

104.    Importantly, Defendant's investigation did not conclude or allege that Plaintiff was involved in the tablet going missing in the first place.

105.    Instead, Defendant seized on an immaterial discrepancy in the medication count records to manufacture an allegation of "falsification of documentation" to use as grounds for Plaintiff's termination.

106.    However, that single instance of documentation is directly contradicted by Plaintiff's scrupulous actions in searching for the missing tablet and preparing a written incident report on March 26; finding the tablet on March 27; immediately notifying Director Thomas-Philip

and Nurse Reyes by email; and candidly explaining the whole incident during Defendant's investigation.

107.    Indeed, Plaintiff's March 27, 2019 email to Director Thomas-Philip and Nurse Reyes specifically notes that: "We *counted all narcs* with Tiffany afterwards and *count is balanced now*."

108.    Ignoring Plaintiff's actions to the contrary, Defendant seized on an immaterial discrepancy in Plaintiff's documentation of the missing tablet to manufacture baseless allegations of "falsifying documentation" as pre-text to Plaintiff's termination.

109.    Not only is Defendant's allegation of "falsifying documentation" contradicted by all of Plaintiff's actions, other similarly situated nurses employed by Defendant who incorrectly documented the medication count were not accused of falsifying documentation and were not disciplined or terminated by Defendant as a result.

110.    For example, around April 20, 2015, Plaintiff emailed Defendant's Compliance and Human Resources Department to report that Nurse Sandra Gant had administered a vial of Lorazepam but failed to document same in Defendant's Narcotic Count Sheet.

111.    Defendant's Human Resources Department never responded to Plaintiff's email, and Nurse Ms. Grant was not disciplined or terminated as a result.

112.    Throughout Plaintiff's five years of employment with Defendant COMHAR, Plaintiff scrupulously followed the rules and reported to Defendant's management more than a dozen instances of improper documentation, compliance violations, and staff misconduct. All went uninvestigated and Defendant COMHAR took no action to discipline its employees for misconduct far more serious than Plaintiff's single instance of "incorrectly documenting" a pill count.

113.    There is no evidence that Plaintiff actually falsified documentation or acted inappropriately in any way, and Defendant's allegations against Plaintiff are pre-text to an unlawful termination based on Claimant's religion and/or prior protected activity.

114.    The above are just some of the examples of unlawful discrimination and retaliation to which Defendant COMHAR subjected the Plaintiff on a continuous and on-going basis throughout Plaintiff's employment.

115.    Plaintiff claims that Defendant discriminated against and terminated Plaintiff because of his religion and religious practices, and because Plaintiff complained or opposed the unlawful conduct of Defendant related to the above protected classes.

116.    Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

117.    Plaintiff claims unlawful actual discharge and also seeks reinstatement.

118.    Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition as a direct result of the unlawful employment practices of Defendant COMHAR alleged herein.

**B.  UNPAID OVERTIME ALLEGATIONS**

119.    At all times material, Plaintiff was employed as a Licensed Practical Nurse and was a non-exempt employee entitled to overtime compensation under the FLSA and PMWA.

120.    At all times material, Defendant COMHAR was an employer under the FLSA because Defendant COMHAR was an institution primarily engaged in the care of the sick, the aged, or the mentally ill or developmentally disabled who live on the premises.

121.    At all times material, Defendant COMHAR acted with full knowledge that Plaintiff was a non-exempt employee under the FLSA and PMWA.

122. Indeed, at all times material during his employment with Defendant COMHAR, Plaintiff's payroll timesheets were entitled "NON-EXEMPT TIME SHEET."

123. At all times material, Plaintiff worked the third shift from 12:00am to 8:00am, five days per week.

124. Throughout his employment with Defendant COMHAR, Plaintiff consistently worked at least 40 hours per week.

125. Though Plaintiff's scheduled 8-hour workday ended at 8:00am, Defendant COMHAR regularly required Plaintiff, as the outgoing shift-nurse, to administer medications and complete the necessary medical documentation starting at 8:00am exactly.

126. Nurses were required to document how the medication was administered, whether the patient took the medication on their own or the nurse had to administer it, the patient's reaction to the medication, whether intervention necessary, wound care, etc.

127. All times material, Defendant required nursing staff, including Plaintiff, to remain on Defendant's premises until all medications were administered and the associated required medical documentation was completed.

128. At all times material, Defendant's policies and procedures, state regulations, and the professional standard of care mandated that nursing staff must document the administration of medication after the medication is actually administered.

129. This medication administration paperwork was necessary for every single patient on Plaintiff's shift, and Plaintiff typically had between 5-8 patients divided amongst two floors.

130. Therefore, any employee that was required to administer medication to patients exactly at the time their shift ended would be required take time after the end of their shift to complete the necessary documentation in the patient's medical record.

131.    Additionally, it was impossible to predict the amount of time administering the medication at the end of the shift would take because frequently the patients' mental and behavioral health status could greatly delay the process.

132.    As a result, the medication administration process could take anywhere from twenty minutes to two hours depending on the number of patients and their level of compliance.

133.    Where Defendant COMHAR required Plaintiff to administer medications exactly at the time his 8-hour shift ended, Plaintiff was necessarily required to work more than 8-hours to complete the required tasks.

134.    Immediately after beginning employment with Defendant COMHAR, Plaintiff noticed that other nursing staff were routinely filling out medication administration records in advance, and then simply signing or dating the record at the end of a particular shift.

135.    Though unethical and a breach of the standard of care, other nursing staff at were forced into the practice because they knew Defendant COMHAR would not pay them for any time worked beyond 40-hours per week.

**2014**

136.    Around late-March 2014, shortly after Plaintiff started working for Defendant COMHAR, Plaintiff approached Director Gaumer and reported that it was impossible for him to administer medications at the end of his shift and complete the necessary documentation without taking time after his shift was scheduled to end.

137.    Plaintiff further reported that he had been reporting the overtime on his timesheets but it was being removed as "unauthorized."

138.    Director Gaumer explained that was "how COMHAR operates" and that it had always been Defendant COMHAR's practice to have the night nurse administer the morning round of medications at 8:00am, when the nursing shifts changed.

139.    Director Gaumer told Plaintiff he would not be permitted to work overtime for time spent administering medication at the end of his shift, and that she expected Plaintiff to be timely with his required duties.

140.    Director Gaumer told Plaintiff to bring his concerns to the newly-hired nursing manager to see if she could organize the schedule to allow the nurses to administer the medications and leave on time.

141.    Around April 22, 2014, Plaintiff reported his concerns about the medication administration scheduling and unpaid overtime to Nursing Manager De Berry.

142.    In line with Director Gaumer, Nursing Manager De Berry told Plaintiff the medication scheduled would not be changed and that he was expected to complete the 8:00am medication administrations and all documentation as part of his regular duties.

143.    On April 29, 2014, about a week after Plaintiff reporting his concerns, Nursing Manager De Berry provided Plaintiff with a written note titled "Documentation for Record" that stated the following:

> Since the 1st week of April we have had three or more discussions regarding completing your nursing task and concluding your shift in a timely manner. I offered several suggestions to help you restructure your time such as providing care to clients with complex needs first, rearrange med pass or and documentation prior to the end of your shift. In addition, I requested that if you need more time to complete documentation than do so away from the nurse's station to allow the oncoming nurse and staff amble time to begin their shift responsibilities. As of date, I haven't noted any significant progress/ change in you managing your time during your shift or make use of suggestions offered. In moving forward I would like a copy of your duties performed during your shift and the time frame required to

> complete each task for my review. In sum, it is my expectation that
> you will make the necessary changes based on my recommendations
> within the next four weeks.

144. Plaintiff provided a written response the same day explaining that it was impossible to complete the medication administrations in the time allotted, and it would be a violation of the nursing standard of care to prepare medical documentation before the medical care was delivered.

145. Around May 22, 2014, Plaintiff sent a memorandum to the Defendant's CEO reporting that he was being forced to either violate the rules by preparing medical documentation before the medical care took place or take unpaid time after his shift ended to complete the required medical documentation.

146. Around May 28, 2014, Defendant COMHAR's Compliance Officer, Jeff Krauss requested a copy of Nursing Manager De Berry's note and told Plaintiff's that he would investigate the matter.

147. Defendant COMHAR never took action with respect to Plaintiff's complaints about being forced to work more than 40 hours per week without overtime pay and with respect to the reported violations of the standard of care by COMHAR employees.

**2015 - 2016**

148. From February 2014 through December 2016, Defendant COMHAR prohibited employees from reporting more than 40-hours a week without prior authorization, and overtime was rarely authorized even if it was requested.

149. At all times material, Defendant COMHAR prohibited Plaintiff from reporting more than 8 hours on his payroll timesheet because employees were subject to discipline if they reported unauthorized overtime on their payroll timesheets.

21

150.    Around January 21, 2016, Plaintiff sent a copy of his May 22, 2014 memo to the CEO of Defendant COMHAR reporting unpaid overtime via email to COMHAR's then-Director of Human Resources, Robin Thomas.

151.    Around January 27, 2016, HR Director Thomas replied to Plaintiff's email and stated "Thanks for your email. I will review and follow-up."

152.    HR Director Thomas never followed up.

153.    Around October 8, 2016, Plaintiff, Nurse Barnes, and Nurse Gant were discussing their shared concerns about overtime pay at the nursing station. During this conversation, Supervisor Selden-Graham was working within earshot, but was not a part of the conversation.

154.    Around October 11, 2016, approximately three days after discussing overtime with his co-workers, Supervisor Selden-Graham sent an email to Plaintiff, Nurse Barnes and Nurse Gant that stated, in relevant part, as follows:

> Good morning, it has come to my attention that within the nursing team here at York street there are many issues transpiring that have been brought to me regarding communication. firstly staff issues should be brought to my attention as the immediate supervisor to avoid internal confrontation. Anyone accusatory of this will be subject to administrative action from this point moving forward through Human Resource involvement and that includes similar dealings with the MHT staff as well. In addition any discussions with any supervisor here that is repeated to a fellow staff member within Comhar or York Street is also subject to Human Resource Involvement. Any questions or concerns please feel free to contact me via email, phone or face to face. …

155.    Plaintiff, Nurse Barnes, and Nurse Gant all collectively understood Supervisor Selden-Graham's email to be a threat of retaliation if they persisted in voicing and discussing their concerns about Defendant COMHAR's practice of not paying them for overtime hours they were being forced to work.

22

**2017-2018**

156.     In January 2017, Defendant COMHAR's then-Director, Aiesha Ahmed, issued a memo to all staff expressly prohibiting all employees from working overtime as follows:

> Effective immediately no overtime should be incurred unless you are given the permission to work overtime. Employees are expected to complete their respective tasks within the scheduled shift that they are designated to work. If they are picking up an additional shift, it should be approved by your immediate supervisor, or nurse manager if appropriate. If someone works overtime to cover for a staff member who is running late, then please make sure that the timesheet corresponds with each other. Staff cannot simply work beyond their shift and be putting it on your timesheet without knowledge.

> I will be reviewing time sheets very closely from this this point on. I also want to make sure that we do not burn staff out by working too many hours and being put in compromising situations where they are tired and not providing good care.

> If you have any questions feel free to contact me. Please sign and date this memo and return to my mailbox.

157.     At all times material prior to January 2019, it was Defendant's practice to deny payment of overtime for time beyond 40 hours per week worked.

158.     In approximately February 2018, Plaintiff and Nurse Barnes decided to raise their concerns about unpaid overtime with Supervisor Selden-Graham together since they were not permitted to discuss the matter amongst themselves.

159.     Supervisor Selden-Graham told Plaintiff and Nurse Barnes they were not permitted to report overtime spent administering medication and completing documentation after their shift as overtime.

160.     Around February 11, 2018, Plaintiff sent an email to Defendant's management employees Elaine Babcock, LaMar Brooks, C. Taylor, and Colleen Thomas-Philip stating the following:

As a licensed nurse, I'm supposed to report any violations of law I come across at my place of work, and my inquiry and report have purpose not to retaliate to anyone, but to stop current violations and to prevent future once. More to that, I have to let you know again and again that I was always subject to retaliation for reports of violation of law at Comhar, and one of most recent, is significant workload increase as of 1/30/2018. **Comhar administration is aware that I have at least 1-1.5 hours of "unauthorized" overtime for each business day, and I'm not get paid for this time.** To make this issue worse, administration increased my work load and assigned me to check every medication, including overflow stock drugs of each and every resident for expiration date and for script renewal on my every work shift. Comhar administration realize that medications are not to be expired every day, neither scripts renewals need to be checked daily. Purpose of this and many prior significant workload increases is to make the work environment so intolerable a reasonable person would not be able to stay. Copy of 1/30/18 workload increase paper and discussion is available upon request.

(emphasis added).

161.    Between January 2017 and December 2018, Plaintiff continued reporting complaints regarding the unpaid time Defendant COMHAR's management and supervisory employees on a regular basis and continued to discuss same with his coworkers.

162.    During this time and in retaliation for Claimant's complaints, Respondent began denying Claimant's requests for schedule adjustments, which Respondent previously honored as part of Claimant's religious accommodation.

**2019**

163.    Starting in January 2019, Defendant COMHAR began requiring all nursing staff to document the time they arrive for a shift and the time they leave on a "Staff Attendance Sheet" that was separate from the timesheet used for payroll purposes.

164.    At all times material prior to January 2019, Defendant COMHAR did not require staff to use the "Staff Attendance Sheet" and the payroll timesheet was the only record of hours worked.

165.    At all times material prior to January 2019, Defendant COMHAR prohibited Plaintiff from reporting hours worked beyond 40 in a workweek on his payroll timesheet because it was considered "unauthorized" overtime.

166.    From January through March 2019, Plaintiff documented the exact hours he worked on the Staff Attendance Sheet and these records show that Plaintiff worked more than 8-hours on nearly every shift.

167.    However, during this same time frame, Plaintiff reported only 8 hours worked per shift on his payroll time sheet because it had been Defendant COMHAR's policy to discipline employees for reporting "unauthorized" overtime at all times during the five (5) years Plaintiff worked for Defendant COMHAR.

168.    At all times during Plaintiff's employment with Defendant, on days that Plaintiff was required administer medications scheduled for 8:00am, Plaintiff was required to work anywhere between 20-120 minutes after his 8-hour shift ended to complete the necessary documentation in the patient's medical record.

169.    From the time of Defendant COMHAR's January 2017 memo prohibiting overtime through January 2019, Plaintiff routinely worked more than 40 hours per week and was not paid overtime.

170.    For the first time in January 2019, Defendant COMHAR began paying overtime to Plaintiff based on the hours he documented on the Staff Attendance Sheet, notwithstanding the fact that Plaintiff did not request authorization or report that overtime on his payroll timesheet.

171.    Defendant COMHAR's decision to start paying Plaintiff overtime in January 2019 was made in anticipation of Plaintiff reporting Defendant COMHAR's longstanding practice of not paying overtime to Plaintiff and others similarly situated to government agencies.

172.     Defendant COMHAR decision to start paying Plaintiff overtime in January 2019 was made in anticipation of terminating Plaintiff's employment and to insulate Defendant COMHAR from liability for unpaid overtime claims.

173.     Starting at the time of hire in 2014 and through his termination in 2019, Defendant COMHAR required Plaintiff to administer medications exactly at the end of his shift.

174.     As a result of Defendant COMHAR's policies and practices, Plaintiff worked more than 40 hours per week and Defendant COMHAR did not compensate Plaintiff for that time as required by law.

175.     While Plaintiff cannot presently ascertain the full amount of overtime compensation Defendant COMHAR failed to pay, the records in Plaintiff's possession currently evidence that when he was scheduled to administer medications at 8:00am, Plaintiff worked an average of 3-5 hours per week of overtime.

176.     At all times material, Plaintiff was prohibited from reporting overtime he worked on his payroll timesheet, and from February 2014 to January 2019, Defendant COMHAR did not pay Plaintiff for all hours worked beyond 40 in a workweek, as required by state and federal law.

177.     Upon information and belief, Defendant COMHAR possesses payroll records that will evidence further unpaid overtime due to Plaintiff from February 2014 through December 2018.

178.     At all times material, Defendant COMHAR's practice of prohibiting Plaintiff from recording overtime and refusal to pay Plaintiff overtime wages was intentional and with full knowledge that Plaintiff was entitled to overtime under state and federal law.

## COUNT I

### Employment Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*
### *Plaintiff v. Defendant COMHAR, Inc.*

179.     Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

180.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part: "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's …religion; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's …religion."

181.     At all times material, Plaintiff was a practicing member of the Jewish religion.

182.     At all times material, Plaintiff's religious beliefs were sincerely held and entitled to protection under Title VII.

183.     Defendant COMHAR subjected Plaintiff to adverse employment action by terminating Plaintiff's employment on April 25, 2019.

184.     At all times material, Plaintiff was otherwise qualified and capable of performing his job adequately.

185.     At all times material, Plaintiff's religion and religious beliefs were the motivating and/or determinative factor in Defendant COMHAR's decision to terminate Plaintiff's employment on April 25, 2019.

186.    Defendant COMHAR's decision to terminate Plaintiff's employment because of Plaintiff's religion and religious practices is an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964.

187.    Defendant COMHAR's decision to terminate Plaintiff's employment on April 25, 2019, was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

188.    As a result of Defendant COMHAR's unlawful termination of Plaintiff's employment in violation of Title VII, Plaintiff has suffered and continues to suffer emotional and financial harm.

## COUNT II
### Failure to Accommodate Plaintiff's Religious Beliefs in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*
### *Plaintiff v. Defendant COMHAR, Inc.*

189.    Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

190.    Title VII requires employers to accommodate an employee's sincerely held religious beliefs or practices unless the accommodation would impose an undue hardship on the employer.

191.    At all times material, Plaintiff had a bona fide religious belief that conflicted with Defendant COMHAR's nursing shift schedule.

192.    Plaintiff informed Defendant COMHAR of his sincerely held religious beliefs and the employment-related conflict created by his religious beliefs.

193.    Defendant COMHAR failed to accommodate Plaintiff's sincerely held religious beliefs even though Defendant COMHAR could have done so without undue hardship.

194.    Defendant COMHAR's failure to accommodate Plaintiff's sincerely held religious beliefs is a violation of Title VII of the Civil Rights Act of 1964.

195.    Defendant COMHAR's failure to accommodate Plaintiff's sincerely held religious beliefs, was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

196.    As a result of Defendant COMHAR's failure to accommodate Plaintiff's sincerely held religious beliefs in violation of Title VII, Plaintiff has suffered and continues to suffer emotional and financial harm.

## COUNT III
### Unlawful Retaliation in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*
### *Plaintiff v. Defendant COMHAR, Inc.*

197.    Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

198.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

199.    Plaintiff engaged in protected activity under Title VII including, but not limited to, the following:

      a.  Requesting a religious accommodation from Defendant COMHAR;

      b.  Challenging and opposing Defendant COMHAR's unlawful employment practices;

      c.  Filing charges of discrimination with the EEOC and PHRC.

200.    After Plaintiff filed the March 2019 Charge of Discrimination and met with Defendant COMHAR to challenge and oppose Defendant's failure to accommodate Plaintiff's religious beliefs as required by Title VII, Defendant suspended Plaintiff without pay on March 29, 2019, and terminated Plaintiff's employment on April 25, 2019.

201.    Plaintiff's prior protected activity and/or opposition to Defendant COMHAR's unlawful employment practices was the motivating and/or determinative factor in Defendant's decision to terminate Plaintiff's employment on April 25, 2019.

202.    The temporal proximity between Plaintiff's protected activity and Defendant COMHAR's decision to take materially adverse employment action against Plaintiff is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

203.    Defendant COMHAR's decision to terminate Plaintiff in retaliation for Plaintiff's prior protected activity and/or opposition to Defendant COMHAR's unlawful employment practices, was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

204.    Defendant COMHAR's decision to terminate Plaintiff's employment in retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964.

205.    As a result of Defendant COMHAR's retaliatory termination of Plaintiff's employment in violation of Title VII of the Civil Rights Act of 1964, Plaintiff has suffered and continues to suffer emotional and financial harm.

## COUNT IV

### Failure to Pay Overtime Compensation in Violation of the
### Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*
### *Plaintiff v. Defendant COMHAR, Inc.*

206.    Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

207.    Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") requires covered employers to pay non-exempt employees overtime at a rate of 1.5 times the employee's regular rate of pay for all hours worked above 40 in a workweek.

208.    At all times material, Defendant was an employer covered by the FLSA.

209.    At all times material, Plaintiff was a non-exempt employee under the FLSA.

210.    Plaintiff regularly worked more than forty (40) hours per week in the employ of Defendant COMHAR.

211.    Defendant failed to pay Plaintiff overtime at the rate of 1.5 times his normal rate of pay for all hours worked in excess of forty (40) hours per work week as required by FLSA.

212.    Defendant also failed to pay Plaintiff for all compensable time for which Plaintiff provided work for the benefit of Defendant.

213.    Defendant's failure to pay Plaintiff overtime at a rate of 1.5 times Plaintiff's regular rate of pay for all hours worked above 40 in a workweek is a violation of the FLSA.

214.    Defendant's failure to compensate Plaintiff for overtime work as required by law was knowing, willful, intentional, and done in bad faith.

215.    Plaintiff suffered damages as a result of Defendant's knowing and willful failure to pay Plaintiff overtime wages as required by law.

216.     Plaintiffs is entitled to back wages at the rate of one-and-a-half times Plaintiff's regular rate of pay for all overtime hours worked in excess of forty (40) hours per week, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

217.     Plaintiff is entitled to liquidated damages equal to the amount of overtime compensation and unpaid compensation due to him under the FLSA, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

218.     The work and pay records of Plaintiff are in the possession, custody, and/or control of Defendant, and Defendant is under a duty pursuant to section 11(c) of the FLSA, 29 U.S.C. § 211(c), and pursuant to the regulations of the United States Department of Labor to maintain and preserve such payroll and other employment records from which the amount of Defendant's liability can be ascertained. Plaintiff requests an order of this Court requiring Defendant to preserve such records during the pendency of this action.

219.     Plaintiff is also entitled to an award of reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 29 U.S.C. § 216(b).

### COUNT V
**Unlawful Retaliation in Violation of the
Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*
*Plaintiff v. Defendant COMHAR, Inc.***

220.     Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

221.     Under the FLSA "[I]t shall be unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA] or related to this chapter, or has testified or is about to testify in any such proceeding …." 29 U.S.C. § 215(a)(3).

222.    Plaintiff engaged in protected activity under the FLSA including, but not limited to, the following:

      a.    Making verbal and written complaints about unpaid overtime to supervisory and management employees of Defendant COMHAR;

      b.    Discussing unpaid overtime with co-workers and encouraging other employees to report complaints about unpaid overtime;

      c.    Challenging and opposing Defendant COMHAR's unlawful employment practices;

223.    Plaintiff's prior protected activity and/or opposition to Defendant COMHAR's unlawful employment practices was the motivating and/or determinative factor in Defendant's decision to terminate Plaintiff's employment on April 25, 2019.

224.    The temporal proximity between Plaintiff's protected activity and Defendant COMHAR's decision to take materially adverse employment action against Plaintiff is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

225.    Defendant COMHAR's decision to terminate Plaintiff in retaliation for Plaintiff's prior protected activity and/or opposition to Defendant COMHAR's unlawful employment practices, was intentional, willful, and made with reckless indifference to Plaintiff's rights under the FLSA.

226.    Defendant COMHAR's decision to terminate Plaintiff's employment in retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of FLSA.

227.    As a result of Defendant COMHAR's retaliatory termination of Plaintiff's employment in violation of FLSA, Plaintiff has suffered and continues to suffer emotional and financial harm.

## COUNT VI

### Failure to Pay Overtime Compensation in Violation of the
### Pennsylvania Minimum Wage Act, 42 P.S. § 333.101, *et seq.*
### *Plaintiff v. Defendant COMHAR, Inc.*

228.    Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

229.    The Pennsylvania Minimum Wage Act ("PWMA"), 42 P.S. §§ 333.101, *et seq.*, and its implementing regulations require Pennsylvania employers to pay non-exempt employees overtime at a rate of 1.5 times the employee's regular rate of pay for all hours worked above 40 in a workweek.

230.    At all times material, Defendant was an employer covered by the PWMA.

231.    At all times material, Plaintiff was a non-exempt employee under the PWMA.

232.    Plaintiff regularly worked more than forty (40) hours per week during his employment with Defendant.

233.    Defendant failed to pay Plaintiff overtime at the rate of 1.5 times his normal rate of pay for all hours worked in excess of forty (40) hours per work week as required by PWMA.

234.    Defendant also failed to pay Plaintiff for all compensable time for which Plaintiff provided work for the benefit of Defendant.

235.    Defendant's failure to pay Plaintiff overtime at a rate of 1.5 times Plaintiff's regular rate of pay for all hours worked above 40 in a workweek is a violation of the PWMA.

236.    Defendant's failure to compensate Plaintiff for overtime work as required by law was knowing, willful, intentional, and done in bad faith.

237.    Plaintiff suffered damages as a result of Defendant's knowing and willful failure to pay Plaintiff overtime wages as required by the PWMA.

238.    Defendant violated the above and Plaintiff suffered numerous damages as a result.

<u>COUNT VII</u>

**Failure to Pay Wages Due in Violation of the
Pennsylvania Wage Payment And Collection Law, 43 P.S. § 260.1,** *et seq.*
*Plaintiff v. Defendant COMHAR, Inc.*

239.    Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

240.    The Pennsylvania Wage Payment And Collection Law ("WPCL"), 43 P.S. § 260.1, et seq, and its implementing regulations requires all employers in Pennsylvania to pay employees wages due on regular paydays designated by the employer in advance.

241.    Further, under the WPCL, "Whenever an employer separates an employe[e] from the payroll, …the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable."

242.    At all times material, Defendant COMHAR was an employer covered by the WPCL.

243.    At all times material, Plaintiff was an employee under the WPCL.

244.    As set forth herein, Plaintiff was entitled to overtime compensation for all hours worked beyond 40 in a workweek and Defendant did not pay Plaintiff those overtime as required by state and federal law.

245.    Where Plaintiff worked compensable overtime in any given work week and was therefore entitled to overtime wages under state or federal law, Defendant was required by the WPCL to pay Plaintiff that compensation "not later than the next regular payday of his employer on which such wages would otherwise be due and payable."

246.    If it is found that Defendant COMHAR failed to pay Plaintiff overtime wages required by state or federal law, Defendant's failure to pay overtime wages due to Plaintiff on the next regular payday after they were earned also violates the WPCL.

247.   Defendant's failure to pay Plaintiff for overtime as required by the WPCL was knowing, willful, intentional, and done in bad faith.

248.   Defendant's failure to comply with the WPCL caused Plaintiff to suffer loss of wages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant COMHAR, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Respectfully submitted,

**Dated: June 8, 2020**                    **DEREK SMITH LAW GROUP, PLLC**

_____

**CHARLES M. SCOTT, ESQUIRE**
Attorney ID No.: 326926
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
charles@dereksmithlaw.com
*Attorney for Plaintiff, Benjamin Vaynshelboym*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

BENJAMIN VAYNSHELBOYM

**(b)** County of Residence of First Listed Plaintiff   **Philadelphia County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
CHARLES M. SCOTT, ESQ.   DEREK SMITH LAW GROUP, PLLC
Attorney ID: 326926   1835 Market St., Suite 2950
(215) 391-4790   Philadelphia, Pennsylvania 19103
charles@dereksmithlaw.com

## DEFENDANTS

COMHAR, INC.

County of Residence of First Listed Defendant   **Philadelphia County**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
  Plaintiff
- ☐ 2  U.S. Government
  Defendant
- **X** 3  Federal Question
  *(U.S. Government Not a Party)*
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability    Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel &    ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander    Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine    ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability    **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability    ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury    ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice    ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | **X** 442 Employment    ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations    ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment    ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other    **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education    ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- **X** 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e, et seq; 29 U.S.C. § 201, et seq.
Brief description of cause: **Employment Discrimination; Unlawful Retaliation; Failure to Pay Overtime Wages**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
**In excess of $150,000.00**

CHECK YES only if demanded in complaint:
JURY DEMAND:   **X** Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   **June 8, 2020**

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?      Yes ☐      No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?      Yes ☐      No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?      Yes ☐      No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?      Yes ☐      No ☐

I certify that, to my knowledge, the within case ☐ is / ☐ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____   _____   _____
                                                      *Attorney-at-Law / Pro Se Plaintiff*                    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**    *Federal Question Cases:*

☐  1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐  2.  FELA
☐  3.  Jones Act-Personal Injury
☐  4.  Antitrust
☐  5.  Patent
☐  6.  Labor-Management Relations
☐  7.  Civil Rights
☐  8.  Habeas Corpus
☐  9.  Securities Act(s) Cases
☐  10.  Social Security Review Cases
☐  11.  All other Federal Question Cases
         *(Please specify): _____*

**B.**    *Diversity Jurisdiction Cases:*

☐  1.  Insurance Contract and Other Contracts
☐  2.  Airplane Personal Injury
☐  3.  Assault, Defamation
☐  4.  Marine Personal Injury
☐  5.  Motor Vehicle Personal Injury
☐  6.  Other Personal Injury *(Please specify): _____*
☐  7.  Products Liability
☐  8.  Products Liability – Asbestos
☐  9.  All other Diversity Cases
         *(Please specify): _____*

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐  Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐  Relief other than monetary damages is sought.

DATE: _____   _____   _____
                                                      *Attorney-at-Law / Pro Se Plaintiff*                    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| **BENJAMIN VAYNSHELBOYM** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **COMHAR, INC.** | : | NO. 2:20-cv-02690 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (**X**)

| | | |
|---|---|---|
| **June 8, 2020** | **Charles M. Scott, Esq.** | **Plaintiff** |
| **Date** | **Attorney-at-law** | **Attorney for** |
| **(215) 391-4790** | **(215) 893-5288** | **charles@dereksmithlaw.com** |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# EXHIBIT B

# FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
# COURT OF COMMON PLEAS OF PHILADELPHIA



*Filed and Attested by the Office of Judicial Records 11 JAN 2021 01:06 pm M. RUSSO*

COMHAR, INC.,

    PLAINTIFF,

    v.

BENJAMIN VAYNSHELBOYM

    DEFENDANT.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

CIVIL ACTION NO. 201101299

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association
Lawyer Referral
and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197**

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197**

10-284

Nachmias, Morris & Alt
Robert J. Haurin
Attorney ID No. 65947
620 West Germantown Pike, Suite 350
Plymouth Meeting, PA 19462
rhaurin@nmalaw.net

| **To the herein: Defendant** |
| You are hereby notified to file a written response to the enclosed pleading within twenty (20) days from service hereof or a judgment may be entered against you. |
| /s/ Robert J. Haurin |
| Robert J. Haurin, Esquire |

Attorney for COMHAR, Inc.

| COMHAR, INC., | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| | : | |
| PLAINTIFF, | : | |
| | : | CIVIL ACTION NO. 201101299 |
| | : | |
| v. | : | |
| | : | |
| BENJAMIN VAYNSHELBOYM | : | |
| | : | |
| | : | |
| | : | |
| DEFENDANT. | : | |

## AMENDED COMPLAINT

Plaintiff, COMHAR, Inc. ("COMHAR") complains about Defendant, Benjamin Vaynshelboym as follows:

1.      COMHAR is a not for profit organization organized in accordance with the laws of the Commonwealth of Pennsylvania. COMHAR provides a wide array of services to children, adults and older adults with mental illness and varying degrees of intellectual/development disabilities including, but not limited to home health care, behavioral health rehabilitation, targeted case and psychiatric evaluation and treatment services management. With regard to adults and older adults, COMHAR also provides residential support services in group living facilities and assistance for individuals with independent housing. The individuals to whom COMHAR provides services to are "Consumers."

1

Case ID: 201101299

2.      Defendant is a licensed practical nurse ("LPN") and was formerly employed by COMHAR. During the course of his employment with COMHAR, Defendant removed from COMHAR, without its knowledge or consent, various confidential and proprietary documents of COMHAR including, but not limited to, medical records of Consumers and confidential email communications between members of COMHAR's management team.

## JURSIDICTION AND VENUE

3.      This Court has jurisdiction over this matter, which involves, among other things, Defendant's theft of COMHAR property, the misappropriation of COMHAR's confidential and proprietary information, and Defendant's breach of his duty of loyalty to COMHAR.

4.      Jurisdiction and venue are proper in this Court insofar as all of the acts giving rise to this matter occurred in Philadelphia County and Defendant resides in Philadelphia County.

## FACTS GIVING RISE TO CAUSES OF ACTION

5.      In or about February 2014, Defendant became employed by COMHAR as an LPN. Defendant was assigned to work the midnight shift at COMHAR's long term structured residence located at York Street in Philadelphia (The "York Street Facility") from Tuesday through Saturday, 12 midnight to 8:00 am. The York Street Facility is home to up to eight (8) adult Consumers with severe intellectual disabilities.

6.      As an LPN, Defendant was hired to perform critical nursing services to COMHAR Consumers who lived at the York Street Facility. Such Consumers required round the clock care. COMHAR provides the Consumers with daily living assistance on a 24 hour per day, 7 day per week basis. Applicable regulations require that COMHAR staff the York Street Facility with a licensed medical professional at all times. This means that COMHAR must have either an LPN or RN on all work shifts, seven days per week.

Case ID: 201101299

7.      Defendant was the only licensed medical professional on his shift at the York Street Facility and was not subject to direct supervisory oversight during his work shifts.

8.      Defendant remained employed at COMHAR until April 25, 2019 when his employment with COMHAR was terminated for job misconduct.

9.      During the course of his employment with COMHAR, Defendant filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in May 2016 (the "May 2016 Charge") against COMHAR.

10.     In the May 2016 Charge, Defendant alleged that he was being discriminated against at work on the basis of his national origin and was denied a request for a shift change as an accommodation for his then unidentified religious beliefs.  Among other things, Defendant specifically claimed that he was wrongfully suspended for sleeping on the job and that his "work load has arbitrarily increased" which he attributed to his national origin and request for a religious accommodation.

11.     COMHAR responded to the May 2016 Charge on July 18, 2016, by filing a position statement, denying it discriminated against Defendant in any way and denying that he ever requested an accommodation based upon his still unidentified religious beliefs.

12.     In response to COMHAR's position statement, Defendant filed three rebuttal statements with EEOC on July 24, 2016, October 9, 2016, and November 7, 2016, respectively.

13.     In connection with filing his rebuttal statements, Defendant provided EEOC with COMHAR confidential and proprietary information including email communications between managers at COMHAR, supervision notes of Plaintiff's job performance, work schedules at the York Street Facility, call out sheets, a confidential letter received by the CEO of COMHAR from

3

Case ID: 201101299

the Pennsylvania Department of Human Services and other COMHAR records that he surreptitiously obtained at work. All of the information was the property of COMHAR.

14. Defendant stole COMHAR's property without its knowledge and/or consent and thereby interfered with its exclusive right to sole ownership of that property.

15. In addition to the business records mentioned in paragraph 13 above, Defendant also provided EEOC with numerous medical records of COMHAR Consumers who lived at the York Street Facility.

16. The medical records of Consumers are the property of COMHAR. Under state and federal law, COMHAR is required to ensure that the personal health information of Consumers contained in those medical records is kept strictly confidential by COMHAR as a health care provider and covered entity.

17. At no time did Defendant obtain the consent of any Consumer or their respective guardians to disclose their personal health information to EEOC or any other third party. Moreover, the medical records were likewise taken from COMHAR's premises by Defendant without its knowledge and/or consent.

18. Defendant's disclosure of protected health information of Consumers without the consent of the Consumers or their respective guardians constitutes violations of the federal Health Insurance Portability and Accountability Act ("HIPPA"). In addition, Defendant's disclosures of Consumer medical information also constitutes violations of Pennsylvania's Mental Health Procedures Act.

19. EEOC subsequently dismissed the May 2016 Charge, finding that there was no credible evidence to support his allegations of discriminatory treatment.

Case ID: 201101299

20.     In connection with dismissing the May 2016 charge of discrimination, EEOC issued Defendant a right to sue letter which gave him ninety (90) days to file a lawsuit against COMHAR for the acts of discrimination alleged in the May 2016 Charge.

21.     Defendant did not exercise his right to file a lawsuit against COMHAR.  As a result, Defendant's allegations of discriminatory treatment with respect to the allegations in his May 2016 charge of discrimination were thereby extinguished.

22.     It is believed and therefore averred that Defendant was taking confidential and proprietary information from COMHAR without its consent or knowledge in an effort to construct an employment discrimination claim against COMHAR in May 2016 which did not otherwise exist.  COMHAR also believes and therefore avers that Defendant engaged in the same kind of conduct with one of his prior employers.

23.     Following Defendant's termination in April 2019, he subsequently filed another charge of discrimination with EEOC and eventually filed a federal lawsuit against COMHAR in June 2020, after receiving a right to sue letter from EEOC (the "Federal Action").  In the Federal Action, Defendant ostensibly alleged that his employment with COMHAR was terminated because of his religious beliefs and in retaliation for filing another charge of discrimination with EEOC in March 2019.

24.     COMHAR denies all allegations made by Defendant in the Federal Action, and is vigorously defending that lawsuit in federal court.

25.     In defense of the aforementioned Federal Action, counsel for COMHAR sent to EEOC three separate Freedom of Information Act ("FOIA") requests, seeking the disclosure of EEOC files regarding the three charges of discrimination that Defendant filed against COMHAR.

Case ID: 201101299

26.     On September 24, 2020, EEOC responded to COMHAR's FOIA request with respect to the May 2016 Charge.

27.     On or about September 25, 2020, counsel for COMHAR reviewed the EEOC's response to COMHAR's FOIA request with respect to the May 2016 Charge. It was at this time that COMHAR first discovered that Plaintiff stole from COMHAR its proprietary and confidential information as well as Consumer medical information. Thereafter, counsel for COMHAR reported what EEOC disclosed to COMHAR's CEO and other Executive Staff at COMHAR.

28.     In addition to the information that Defendant supplied to EEOC, COMHAR believes and therefore avers that Defendant stole other additional COMHAR confidential and proprietary information that he currently has in his possession.

29.     On October 19, 2020, COMHAR directed correspondence to Defendant, demanding that he return to COMHAR all of its confidential business and proprietary information including Consumer medical records.

30.     Defendant has failed and refused to return to COMHAR any of its confidential and proprietary information.

## COUNT I – UNLAWFUL CONVERSION OF PROPERTY

31.     COMHAR realleges all allegations set forth in paragraphs 1 to 30 above as if fully restated herein.

32.     COMHAR has a property interest in the aforementioned confidential and proprietary information including Consumer medical records.

33.     At no time did Defendant obtain the consent of COMHAR to remove and retain COMHAR's property.

Case ID: 201101299

34.    At no time did Defendant obtain the consent of COMHAR, its Consumers or their guardians to remove, retain or disclose the Consumer personal health information. Such records are also the property of COMHAR and under its exclusive control to ensure that the information contained therein is kept strictly confidential in accordance with federal and state law.

35.    On information and belief, Plaintiff stole COMHAR's property in order to assert claims against COMHAR for alleged employment discrimination.

36.    Defendant's conduct in stealing COMHAR property to benefit himself was willful and intentional and otherwise interfered with COMHAR's right to exclusive possession and control of such property to the exclusion of all others. Defendant's conduct in disclosing Consumer medical records to EEOC and possibly other third parties interferes with COMHAR's legal obligations to ensure the confidentiality of such records.

37.    Defendant's theft of COMHAR property was without any lawful justification.

38.    Defendant's conduct in removing and retaining COMHAR's confidential and proprietary information amounts to an unlawful conversion of COMHAR property.

39.    COMHAR has been damaged by Defendant's unlawful conduct and will continue to be damaged unless this Court directs Defendant to return to COMHAR all of its property.

WHEREFORE, COMHAR demands judgment in its favor and against Defendant with respect to Count I of the Complaint and requests that Defendant be directed to return all of COMHAR's property and that it be awarded compensatory and punitive damages together with its attorney fees and costs and such other relief that this Court deems appropriate.

## COUNT II – BREACH OF DUTY OF LOYALTY

40.    COMHAR realleges all allegations set forth in paragraphs 1 to 39 above as if fully restated herein.

Case ID: 201101299

41.     As an employee of COMHAR, Defendant owed it a duty of undivided loyalty to COMHAR while in its employ.

42.     As an LPN at COMHAR, Defendant provided direct medical care to Consumers and was entrusted to keep confidential their personal health information. Thus, as an LPN at the York Street Facility, Defendant was in a position of trust and confidence who had access to confidential medical information of Consumers and other confidential and proprietary information of COMHAR.

43.     Defendant breached his duty of loyalty to COMHAR by removing and retaining its confidential and proprietary information without COMHAR's knowledge or consent including Consumer medical records.

44.     It is believed and therefore averred that Defendant's theft of COMHAR property as aforesaid, was intentionally committed by Plaintiff to benefit himself to the detriment of COMHAR and its Consumers.

45.     Defendant failed to act in good faith and solely for the benefit of COMHAR in all matters for which he was employed. To the contrary, Defendant's removal and disclosure of COMHAR property was to benefit himself at the expense of COMHAR and its Consumers.

46.     Defendant's actions in stealing COMHAR property has deprived COMHAR of its exclusive right to possess and control such property to the exclusion of all others including Defendant.

47.     COMHAR has been damaged as a result of Defendant's conduct and willful failure to act for its sole benefit while employed by COMHAR.

WHEREFORE, COMHAR demands judgment in its favor and against Defendant with respect to Count II of the Complaint and requests that Defendant be directed to return all of

Case ID: 201101299

COMHAR's property and that it be awarded compensatory and punitive damages together with its attorney fees and costs and such other relief that this Court deems appropriate.

## COUNT III – MISAPPROPRIATION OF CONFIDENTAL INFORMATION

48. COMHAR realleges all allegations set forth in paragraphs 1 to 47 above as if fully restated herein.

49. COMHAR has taken extensive measures to ensure that its confidential and proprietary information including Consumer medical records remain in its exclusive possession and control by, among other things, limiting access to such information to those employees who have a need to have knowledge of such information.

50. Defendant's theft and removal of valuable COMHAR business records and Consumer medical records has interfered with COMHAR's right to possession of and exclusive control of its confidential and proprietary information.

51. Defendant's theft of COMHAR property that was later used for his own benefit constitutes a misappropriation of COMHAR's confidential and proprietary business information.

52. At all times, Defendant acted without COMHAR's knowledge or consent and without any lawful justification.

53. At all times, Defendant acted solely for his own benefit and to the detriment of COMHAR.

54. COMHAR has been damaged as a result of the unlawful conduct of Defendant.

WHEREFORE, COMHAR demands judgment in its favor and against Defendant with respect to Count III of the Complaint and requests that Defendant be directed to return all of COMHAR's property and that it be awarded compensatory and punitive damages together with

Case ID: 201101299

its attorney fees and costs and such other relief that this Court deems appropriate.

Respectfully submitted,

**NACHMIAS MORRIS and ALT, LLC**

Date:  January 4, 2021                    By: _____

ROBERT J. HAURIN, ESQUIRE
Attorney for Defendant, COMHAR, Inc.
620 West Germantown Pike, Suite 350
Plymouth Meeting, PA  19462
(610) 629-6640

Case ID: 201101299

## VERIFICATION

Woody Rosenbach states that he is the Chief Executive Officer for COMHAR, Inc. ("COMHAR") and that he signs the foregoing Amended Complaint, for and on behalf of COMHAR and is duly authorized to do so. Mr. Rosenbach states that he does not have personal knowledge of all of the information that has been supplied in the Complaint, but has been advised by counsel and other employees of COMHAR that there is no one individual at COMHAR who possesses personal knowledge of all of the information contained therein. Mr. Rosenbach further states that he has been advised that the information contained in the Amended Complaint was true and accurate at the time such information was compiled. The following statement is made subject to the penalties of perjury set forth in 18 Pa.C.S.A. § 4904.

Date: 12/31/2020

Woody Rosenbach

11

Case ID: 201101299